Case 15-5010, Z Street v. John A. Koskinen in his official capacity as Commissioner of Internal Revenue Service Appellant. Ms. McLaughlin for the appellant, Mr. Marcus for the appellee. May it please the Court, good morning, my name is Teresa McLaughlin, and with me is Ellen Del Sol, and we represent the Commissioner. So with the Court's permission to appeal, the government is contesting the District Court's refusal to dismiss this case on three grounds. That it's barred by the Anti-Injunction Act, that plaintiff's claims aren't yet right or justiciable, and that even if there were something to review now, it would really be confined to the special statutory review proceeding of a 74-28 action, a tax court deficiency action, or a suit for refund. The plaintiff alleges that the IRS has an Israel special policy whereby no organization can obtain a tax exemption under Section 501c3 unless its views on Israel are consistent with those of the current administration. It wants injunctive relief against this. This may overstate the argument. Are they saying they can't get one, or are they just saying the process is made more burdensome if they disagree with the Israeli policy of the administration? Well, one of the things that they asked the Court to do, Your Honor, is to bar application of the Israel special policy to its application. That's not inconsistent with what I just asked you. But even if that's what it is, modified by Judge Sintel, how could the taxpayer here, the organization, raise that in a 74-28 suit? How could that be raised? How would a court in that kind of suit have the ability to get at that issue? Well, a 74-28 action applies not only to where there's no determination after 270 days, but also – No, I understand that. Right. So – Go ahead. I'm sorry, Your Honor. I'm sorry. If the application were denied because of an Israel – That's not my question. I want you to sit with my question, which is, of course, if it's denied, they can challenge it, but they've sued now, and I'm asking you whether or not how they could raise this. One of your arguments is as an alternative remedy, 74-28, right? Yes, Your Honor. So how could this – how would a court have jurisdiction under 74-28 to get at this question, that is, that they are being subject to a different standard based on their viewpoint, which results in delay? That's their argument, right? Yes. Okay. So how could that be raised in a 74-28 case? Well, the 74-28 action is adjudicated on the administrative record. Right. But by definition, it couldn't deal with the delay problem because you have to wait 270 days, right? Oh, right. Okay, so stick with that. Doesn't that mean that the 74-28 action is, on its own face, inadequate to deal with the delay question? Well, at the time that it enacted the 74-28 remedy, really in response to the Supreme Court's comment that, you know, there is too much delay in the process, Congress at the same time amended the tax exception to the Declaratory Judgment Act to make an exception to the ban on declaratory judgments with respect to taxes in the case of a 74-28 action. But if an organization seeking an exemption could avoid the Anti-Injunction Act in the 270 days before it becomes eligible for the 74-28 remedy, then that amendment to the Declaratory Judgment Act would be surplusage. Well, no, you're right about that. But we're not talking about any taxpayer. We're talking about this taxpayer and this complaint. And this complaint alleges differential standards based on viewpoint and a resulting delay. That's the only case we have before us. And since you argue in your brief that one of your arguments is that there's an adequate remedy about 74-28, I don't see how that's an alternative remedy if for no other reason that you have to wait 270 days. And you haven't answered that question for me yet. All right. Well, going to the delay. Yeah. I mean, let me, excuse me. If this were like Bob Jones, then I would agree with you because, you know, well, maybe. But this is different from Bob Jones, isn't it? Because in Bob Jones it was a direct relationship to the eligibility of the donors to deduct their contributions. Here they could win their case and still not get a tax exemption for other reasons. Correct? I guess it's possible. Well, of course it's possible. I mean, there may be many defects in their application. I mean, even if they had a constitutionally fair process, they might well not get their tax exemption. Right? But what they want to do is they want to litigate an issue that might affect their exemption now. And we submit that this case is actually closer to the banned interference with assessment and collection than was at issue in both Bob Jones and Americans United because. Yeah, why is that? Both of those organizations actually had exemptions that were recognized, and those exemptions were threatened to be revoked. Here, this is an organization that is seeking a determination in the first instance. But right here they're seeking a constitutionally fair process. Right. They're not in court seeking to restrain the assessment or collection of the tax. They're in court seeking a constitutionally fair process, aren't they? Right. Let me just add to what Judge said. They're not seeking tax exempt status in this case. Right. They're trying to litigate the standard for judging their application. Right. And we submit that that is banned by the Anti-Injunction Act. That's what we're trying to ask you about. The Anti-Injunction Act, we held in Cohen that when it says assessment or collection, it pretty much means assessment or collection. And they're not here asking for it. They're not asking the court to order them to get the exemption. Just that they get due process, they could lose once they get the due process. But they're not seeking to enjoin assessment or collection, are they? Well, we think that that is exactly what they are doing. Why do you think that? Well, because the Supreme Court said in Bob Jones that it has applied the terms of the Anti-Injunction Act with, you know, giving them almost literal effect, almost literal effect. But Bob Jones said it actually had to do with the exemption, not the process of obtaining it. Isn't that correct? Well, just as in Bob Jones and Americans United, the injunctive relief was intended to interfere with, to interpose the court and prevent the IRS from revoking an exemption. Exactly. Now, that's not at issue here. The revocation or issuance of an exemption is not at issue here, is it? Well, the Supreme Court. Well, that's the one I'm asking you. They want to influence the determination. They want to establish the process. That's all they're asking for, isn't it? Well, they want to intervene in, they want to insert the court in the midst of the assessment process. They want the court to pass on the constitutionality of the process that's being afforded them. That's all they're asking for. Well, we submit that in Bob Jones the Supreme Court said you have to look to the purpose. Is this suit brought for the purpose of restraining the assessment and collection of taxes? And the answer here is no. Oh, no, we submit that it is yes. What do you say to Judge Tatel's suggestion that even if they get a fair process, they may still not get the exemption? This case can't determine the exemption, can it? It could go very far, and it could be conclusive. Let me just ask. We'll go ahead, and then I'll ask you my question. Only if they're entitled to it could it be conclusive. So you say the purpose of their case, but the only way we know about the purpose of their case is to look at their complaint. We have no other basis for judging it. And they don't, their prayer for relief does not ask for a tax exemption. It asks for a constitutionally fair process. Well, they want, they ask for three things. You say, well, but we know what they really want, they want a tax exemption. And, of course, they want a tax exemption. I don't have any doubt about that. But that's not the complaint they filed here. They're at an antecedent point. Well, one of the things that they're expressly asking for, Your Honor, is to bar application of the Israel special policy to its application. Right, that's part of the constitutionally fair process they want. They want a court order that says we want the IRS to judge our tax exempt status free of unconstitutional standards. All right. Well, let me ask you this. So for purposes of my question, let's just assume you're right that the Anti-Injunction Act at least literally applies here. What do you do with South Carolina versus Reagan and the proposition that what the court said in there is that Congress didn't intend, when it adopted the pass the Anti-Injunction Act, for it to apply to taxpayers who have no other remedy at all? Well, if the Israel special policy, if the application of the Israel special policy results in the denial of an exemption, then they can contest that. That's not their only argument here. Their argument is that this process, and this is just an allegation, their argument is that the special Israel policy is subjecting them to a different standard than other taxpayers, a standard based on viewpoint which produces a delay in the process. Now, that can't be resolved later on. So if they get denied a tax exemption and then they sue for a refund, they won't get that issue taken care of. Certainly someone whose application is denied based on the Israel special policy is harmed in a lasting, concrete way in which someone who gets the exemption But not the delay. They can't remedy the delay through a refund action. All right. Delay, which gets into is this reviewable now under general principles? Don't go on to justiciability. I still haven't heard from the government in its brief or from you today a response to my concern about They allege unconstitutional delay and I don't see how either in a refund action or in a 7428 action that could be remedied. If you could give me a reason, I would appreciate it. I just don't see it. First of all, the Supreme Court in Bob Jones addressed delay and said that it was really an unavoidable part of the process. And the situation for organizations has actually improved since the enactment of Section 7428. But Congress set no time period for the IRS to process these applications. And so where Congress has not set a deadline, the person seeking a benefit could not, you know, obtain relief from a court under Section 706. That would answer if you were talking about a delay that fell upon everybody or fell upon some for constitutionally irrelevant means. But if you can't possibly be saying that it's subjecting one viewpoint to more delay than all other viewpoints or than some other viewpoints is permissible under the statute, can you? You're saying we can't have litigation about delay. Maybe that's true. But can't we have litigation about an unconstitutional reason for delay? Well, you would still need an established policy. That's why we have the lawsuit is to find out if there is an established policy. And then even if this is just one oral comment in a telephone conversation that this is real special policy existed and there's no written. You're not going to sufficiently evidence. You're not going to sufficiently evidence. It's just way before that. If they come in and allege that you say all people, particularly if you want to go to the back of the line, isn't that stating a constitutional and unconstitutional basis for additional delay? Well, I think they would be better positioned if they were saying that the IRS was giving them short shrift or was not allowing them to create an administrative record. Why would that make a difference? Because as long as the person is going to have a chance once a concrete policy is applied. Well, wait. You keep going back to concrete policy. We have a complaint with a specific allegation and it's a motion to dismiss. So we have to accept. So for purposes of the way we think about this, the IRS has a special Israel policy, right? Well, I would just like to point out that for purposes of the Williams packing test, because it's a flat ban on jurisdiction, it's actually the person seeking injunctive relief who has the burden of establishing that. That's an exception. That's an exception. We all are arguing past each other. Their argument to begin with is the statute doesn't ban this. Right. You devote your argument to why this doesn't come within the exceptions. They're not claiming to come within the exceptions. Their argument is that the statute didn't cover this in the first place. Well, our position is that the Anti-Injunction Act applies to the request for declaratory or injunctive relief that's aimed at the assessment process. Yeah, but this one isn't. This lawsuit is seeking an injunction for a policy burdening the application, for example. And a collateral goal of the act is to protect the Internal Revenue Service from suits about the assessment process pending a suit for refund or other remedies. So we submit that this case falls squarely within. I want to ask you an unfair question that I will also ask the other side. What is the status of this application now? There is a litigation hold on this application. Why couldn't the application process have continued during the litigation? Well, that's discretionary with the IRS. Aha. So you all decided that you're going to hold their application up during this litigation. Well, it is a general rule that once somebody brings a suit challenging the exemption determination process that work on the case stops. I think that the IRS So you'll burden them rather than go ahead and perhaps move the case. That doesn't cover the IRS with Glory Counsel. Well, I think the IRS has to look at is expending any more time on a case that's already in litigation an appropriate use of resources. They have to look at does it promote effective tax administration. It is an unfair question. You're not here to defend that policy. But you might go back and discuss that policy with people at IRS. That's not the way government usually acts. All right. And then we don't think even if you get past the Anti-Injunction Act, we don't think that this unwritten policy is I still don't understand why you keep emphasizing that it's unwritten. Well, there's a case Given the stage of this litigation, that is that we have to accept as true the allegation and the complaint that they have a special we have to accept as true one, that there's a special Israel policy, two, that it's different from others, and three, that it's causing delay. Don't you agree with that? For purposes of deciding this case, we just have to assume that's true. Well, not the whole case. With the Anti-Injunction Act, we are claiming we are defending the referral to the touch-and-go group. And when we deny, the IRS denies that an Israel special policy exists. I know, but if we were at summary judgment, that would be a different question. But we aren't. This was a motion to dismiss on jurisdictional grounds. In our brief, Your Honor, we've referred to a decision of this court called Worth v. Jackson that you may recall because I think that you were the author. Depends on when. When did that happen? Then I'll start trying to remember it. Give me one more clue. What was the subject? One more clue. 2006. Yeah. I need a better clue. Trying to review an unwritten policy puts the court in an untenable position because the – Untenable in the sense of jurisdiction or untenable in some other sense? Well, there's nothing concrete. Was that a motion to dismiss case? The metaphor used by the court was that it's a faceless policy. Was it a motion to dismiss? We're here on 1292B, right? Yes, Your Honor. And only one issue was certified, right? The entire order was certified, Your Honor. But the order does not include a response to that point, does it? I don't – no, I don't think so. So then we're not here to – this is an interlocutory appeal. Yes, Your Honor. We're only here to discuss the issues that were decided. But it's settled law, Your Honor. What's settled? I think the court – It's settled law that on an interlocutory appeal we only consider the issues that were certified. That's the law. We can't decide anything else. I think the rule – Your Honor, with all – with due respect, I think the rule is the opposite. If the other question is inextricably intertwined with the question that comes up on the interlocutory review, we can review it. But it's not – Despite Judge Tatel's dissent from my opinion that says so, we can review it. But this is not inextricably intertwined. You have the jurisdictional questions I think you're entitled to raise here. The other questions you're not. So I actually have a series of questions if my colleagues have finished. Okay. So my first question is this. Imagine the IRS announces today a policy that says as follows. No application by a Jewish group or an African-American group will be considered until one day short of the period under the statute in which it's considered final. All other groups we're happy to consider exemptions for, but because we don't like African-Americans and we don't like Jews, we are not going to do that. Now, is your view that that cannot be challenged? We're not going to – That will not affect the result in the case. And, in fact, as soon as somebody sues us, we will grant them an exemption. Now, is your position that that can never be challenged? Well, I think – Yes or no? Is that your position? Well, you still have to weigh the fitness for review. No, I'm only talking about under the Anti-Injunction Act. That's the only question I have for you. Under the Anti-Injunction Act and the Declaratory Judgment Act, do you think that cannot be challenged? Well, I'm not sure. Yeah, I take that as a yes. So you understand why that might make us feel that maybe there's something wrong with the analysis. If you take the assumption of the analysis and you come to a result that seems absurd, perhaps the assumption of your analysis is wrong. So now let's talk about the assumption of your analysis. Imagine that they are only complaining here about the delay, not about anything else, only the delay. So your view is that the Anti-Injunction Act still bars it, even if it's only the delay. Is that right? Yes, Your Honor. And that is because it inhibits the assessment process. Is that right? Yes, Your Honor. Yes, Your Honor. Okay. So now I'm shocked by something else. Only judges are shocked by these kind of things. This is not a moral shock. It seems to me that the decision that decides completely against you is referred to in footnote four of your reply brief and nowhere else. Sort of shocked that the government would address the most important decision, as far as my view, in a footnote. And that is the Supreme Court's most recent case on this question, which is direct marketing and association. And in that case, the Court says two things. One, that we are going to view the Tax Injunction Act in the same way as the Anti-Injunction Act. And two, that we are going to reject the Court of Appeals' view that orders that merely inhibit assessment are covered by the Tax Injunction Act. Now, you just told me that your case is premised on the idea that if an action inhibits assessment, it is barred. The Supreme Court, in March of this year, held the opposite. I think it's March. Yeah. What is your answer to that? Well, we think that direct marketing is distinguishable for several reasons. But you agree with so far my description. A, that the Court says that the Tax Injunction Act, which was at issue there, is to be read the same as the Anti-Injunction Act. And two, that the Court expressly rejects the argument that claims that merely inhibit assessment are barred by the Act. Do you agree with those two points? Well, I think that, in general, the two Acts are to be construed in peri materia. But there are differences in text that would support a different ruling under the Anti-Injunction Act. Well, the Supreme Court says we assume that words used in both Acts are generally used in the same way. And then they go ahead and discern the meaning of the word restrain. And that is a word in both Acts. But in the Anti-Injunction Act, it's for the purpose of restraining. And before talking about the series of words in the Tax Injunction Act, enjoin, restrain, or suspend, the Court explained that the gerund restraining, standing by itself, which, in fact, it does in the Anti-Injunction Act. There's no suspend or enjoin. That it is much stronger. And so we would rely on that textual difference. Well, the Court says restrain, standing alone, can have several meanings. One is the broad meaning that it merely inhibits. Another narrow meaning, however, means to prohibit from action. To put compulsion upon to enjoin. So you're saying that we should distinguish this case on the ground that it's other words in the Tax Injunction Act are different. Is that right? Partly. And also because when the Supreme Court, the Supreme Court doesn't usually overrule cases sub silentio.  And we submit that the closer line of precedent is. Bob Jones and American United. Bob Jones and American United. But you made the same exact argument to us in Cone. And we said those two cases do not stand for the proposition that the government claims. But, Your Honor, that was a post-assessment, post-collection. It was. Procedural interest. It was. Involving how to refund to taxpayers. I agree with that. And it also uses the word Cone in the title rather than Z Street. There are a lot of ways to distinguish the case. But it also says it's sui generis, Your Honor. But not with respect to this question. With respect to the specific question that you're raising here. Well, this could be. Can you hold for one second? The government raised exactly the same issue you raised now, and we rejected it. And we said that in Jones and American United, the difference is they both were trying to restrain, to enjoin, refusals to provide or a retraction of exemptions. So we've already, in a way, we've decided every issue before us today. But. Against you. But you've said that a post-assessment, post-collection, procedural injury, about refunding a conceded tax is not subject to the Anti-Injunction Act, but that it is also sui generis. Yes, we use the word sui generis. But in the on-bank decision, we took the time to set a standard for evaluating these cases. We said, we said, we said, it says, Determining whether the act applies requires a careful inquiry into three things. The remedy sought, the statutory basis for that remedy, and any implications that it might have on the assessment or collection of taxes. So that's pretty, those are not the words of a decision that is in effect sui generis. We set a standard for how we should look at these cases. Didn't we? If you apply that standard and you look at this case, I just haven't heard from the government why it doesn't fall on the cones. True, it's not quite as, it's not quite coned because the tax hasn't been collected, but. Well, it's anterior to assessment. Someone is seeking a tax exemption. They're not seeking a tax exemption in this complaint. That's not the complaint we had before us. Well, they are virtually doing so. No, they're not. They are trying to litigate the one thing that might come between them and a tax exemption. Well, but. You want to take that as an admission? I mean. That this is the only thing standing between them and an exemption? Are you really going to say that on behalf of the United States Council? Well, maybe that wouldn't be the wisest thing. No. I thought you said there was no such policy, right? Right. With respect to the merits. So then what element of this case could affect their exemption? You say there is no anti-Israel policy. If that's true, the most that they can get out of this is an acknowledgement that there isn't one. How would that affect the disposition of their tax exemption? Well, then, suppose they could establish that one existed in a refund suit. If the IRS were to deny it. I'm not asking that question. Assume they win this case. Okay. Assume they let it go through and they win this, whatever is in their complaint. In your view, would that make any difference at all to whether they get an exemption? Any difference at all? You mean if they establish that an Israel special policy exists and that is it would, in applying it to their situation, would constitute. Well, you agree there is no such policy. So from the government's point of view, at the most they will get is a statement that there is no such policy, right? This is very different than Bob Jones where there was a particular government policy at issue. One of the collateral, the Supreme Court has observed that one of the collateral objectives of the act is to protect the IRS from judicial interference pending a suit for refund. We rejected that in Cohen. We said that the government's claim that there is a closed loop and that it can only be resolved by those set of statutes is wrong. Right? That's what we said. Well, there was no refund at issue there. It was just a method, the adoption without notice and comment method for dispensing refunds. What is the government's explanation below about what this JA-65 means, the document that opposing counsel says supports the proposition that there is ideological content to the IRS's evaluation? I appreciate that you deny that there is one. Has there been any explanation of where this document comes from? The additional information requested document, JA-65. Well, that was brought up on a motion to supplement the record, Your Honor, and opposing counsel had a conversation with another lawyer representing an organization who received this letter and gave him what is in effect a redacted copy that didn't disclose the organization's name. Right, but does the government have an explanation for why they would ask question three, for example? Well, they might be inquiring into whether they might be wanting to see if it's an advocacy organization by checking to see whether the response is even-handed or taking one side of the question vehemently. That's a test for advocacy organizations, that you can't take positions vehemently? Well, not vehemently, but you can't be biased, Your Honor. So a question like that might have a purpose of eliciting. You can't be biased? You can't be biased and get an exemption? There's a difference between if you want to be an educational organization, you have to educate the public without unduly supporting one side or another. So you're saying this may not be for a 501C3. This may be for a different exemption? Well, it might be for a 501C. I mean, I think the representation might have been that it was for a 501C3. I don't know. The government doesn't know or at least has no representation as to where this comes from. Is that right? I know you say it comes from the other side, but within the government there's not an explanation for where this comes from. I don't think we checked, but I didn't represent the government below. You gave us a global response. But that question in question three to which the Chief Judge alludes, do you know of any other group seeking the exemption that has been asked that question? Or a similar question, that is to say, describe your group's organization's religious belief system about anything. Here it is particularly toward the land of Israel. Do you know of any other group being asked that question? I think this group might have been asked the same question. This group might have been asked the same question? Okay. Do you know of anything other than support of Israel that has triggered the government inquiring into the religious belief system of applicants? I'm not aware. So that would be consistent with the proposition that there is an Israel special policy then, right? Well, if it were true. If you seek out Israel and ask them about religious beliefs and don't do that for others. Well, you know, the Israel special policy was consistency with this administration's policy regarding Israel. And that's a proposition you say the government does not ask, right? And that is the proposition you say the government does not ask. We don't. But the government processing of exemptions does not depend on whether there is agreement or disagreement with the administration's position on Israel. Right. That is our position. All right. No further questions. We'll hear from the other side. May it please the Court, Jerome Marcus for the appellee. Let me begin by answering Judge Santel's question. Your Honor, counsel for the government accurately but not quite completely answered Your Honor's question. The status is as counsel said. But what she did not say is that the regulation, excuse me, pursuant to which the case has been stayed is a regulation that authorizes a stay if someone brings a case seeking an exemption. The regulation does not authorize a stay if you bring a case challenging the procedure pursuant to which the exemption is brought. So there's a little more wiggle room, and the government's decision to do what it has done is that much more, I think, evidentiary of what's actually operating here. Can you help me with what you're actually seeking? Yes. So I would say that the briefs are not 100% clear, particularly as comparison to below. I read the briefs, at least originally, as challenging a policy that delays by extra scrutiny an exemption for certain groups. Yes, sir. But not saying that the policy affects the actual exemption in the end, the granting or denial of the exemption. Is that correct? Yes, Your Honor, that is correct. So you would agree that if we say there's a jurisdiction here and you go back below, that you cannot get an order from the court saying, assume you prove there is a policy, you can't get an order from the court saying, and you cannot apply this policy to the question of whether you get an exemption or not. That question, the subset of the merits of the exemption has to wait until a challenge to the denial. You cannot apply. So let me start over again. I appreciate now I'm being unclear. Your challenge is to a policy that affects how long it takes for your group to get the exemption. Yes, sir. You are not challenging a policy which decides the merits of whether you're a court. Your Honor, the panel's questions to the government were exactly what I would have wanted to say. We are saying that they are taking longer for us than they take for other people because of the substance of our views, but we are emphatically not saying that they are deciding against us. And we are, as the panel made clear from its questions, I know your Honors understand, we are not asking the court to say give them an exemption. We're saying give us. Or even to say that one possible way of not giving your exemption is unlawful, right? We haven't reached the question what they're doing about the merits of the exemption. That issue is not the gravamen of the complaint here. It's not anywhere in the complaint. Right. So there's some discussion of primary purpose, et cetera. That's really not the issue here. The only question is the sole purpose. Yes. And your sole purpose is a challenge to a policy that you think delays your decision. Yes, sir. Okay. Now let me – Well, wait. Can we just – hold on one second.  I'm looking at paragraph 43 of the complaint. It looks to me like you're looking for a declaration that this Israel-only policy is itself unconstitutional. Well, I think that – Isn't that what that says? I mean, I know you're asking – it's very clear throughout this that you're challenging the delay. But when you – but this – you say that the limitation of the issuance of the tax-exempt status to a nonprofit based on the substantive views of the persons who operate it constitutes a restriction on speech. I – Paragraph 44. We did say that, Your Honor. Paragraph 44, the existence of Israel policy is viewpoint discrimination in violation of the First Amendment. Well, that – I have an easier time with the second thing than I do with the first. Let me go to the first thing, which I think is a harder question for me. And I agree with you, Your Honor, that the paragraph 43 goes to the merits. Yeah. And I think that – Wait. Let me just say something. When I ask you – I agree with you. It's not the merits of your eligibility for a tax exemption. That's not what we're talking about, right? Yes, sir. It's the merits of the policy. Well – Right? I think that paragraph 43 is, to put it kindly, susceptible of generating confusion as to which of those two – Can you clarify for us now? Yeah. Okay. I think the place to look to get the right answer is the addendum clause. Okay. And where we say this is what we want. Okay. What we want is – What paragraph number is that? It's at the end of – in the wherefore, the very end of JA93. Yeah, go ahead. Okay. What we say is we want an injunctive relief barring application of the special policy into its pending application for tax-exempt status pursuant to 5163 of the code requiring that they disclose. Isn't the first part of that? How could we bar it unless we found it unconstitutional? Oh, I certainly think that applying the Israel special policy to our application, yes, absolutely, we say that's unconstitutional. Right. That goes to the question – that was the easier question that I think Your Honor also asked, which is, is it – and I think your questions to the government counsel reflected this as well – is it constitutional to say everybody with green eyes is going to take this much time and everybody with blue eyes is going to take that much time? Can I – I just want to – this actually could turn this in a different kind of case. So that's why this is important. Okay. Is your current view in light of what you know now and is what – in terms of supporting your complaint, your claim is that there is an Israel-only policy and you define the Israel-only policy as one that causes delay. Is that correct? Yes, sir. You are not now claiming that there is an Israel-only policy that affects the merits of a – Absolutely correct. I am right, right? Yes, sir. All right. That would be another case later. Yes, sir. Maybe you would try to amend the complaint later. That might create another Anti-Injunction Act argument, correct? Yes, sir. All right. But right now the only thing facing us is a challenge to an Israel-only policy of delay. Yes, sir. That's correct? Yes, sir. Okay. Okay. So let me just – So when you say – when you look – tell us to look at the wherefore clause and you ask us to bar the application of that policy to your application, it's just to bar it for purposes of delay? Yes, sir. Okay. All right. Yes, sir. Let me just put a finer point on my answer. Yes. That's a pretty fine point. Okay. Suppose we applied and the next day they denied it. Yes. We didn't have to wait 270 days. We didn't have to wait a week. Yes. They said, you know what? You have a position that's inconsistent with Israel's – with whatever the administrator of the Obama Administration believes about Israel. Yes, yes. Denied. Yes. And we – then it seems to me we could bring a 7420- Yes, yes. Obviously. They don't object to that. Right. Okay. Okay. So all right. That's not why we're here. Okay. All right. I got that. All right. Now, my second question is, understanding where you are, how do we distinguish this kind of delay from other kinds of delays? Right. Now, I think that the Supreme Court's recent decision suggests that everything that might suggest – says that everything that might inhibit slowdown, assessment, et cetera, is not subject to the act. But it can't be, I think, that people who just think that it's taking too long could bring a case before the time limit's set and not have the Anti-Injunction Act bind them. So how do I – how do I distinguish those two? Okay. I think the way you distinguish it is by looking at the allegations of our complaint, which allege – and this is not something that we just, you know, a little birdie told us – allege on the basis of statements made to us by the IRS. And since we all are adults and we read the newspapers, an ocean of disclosures to be – by the Internal Revenue Service to Congress that make clear – and again, we're only at the – Don't worry about it. I'm not – I'm not on the question of whether this is supportable or not. I'm only on the question of whether – how – assuming it is, it would be distinguished from somebody who just thinks it's taking too long. Okay. The short – I'll give you a short answer and a long answer. The short answer is we've alleged a policy. And when you allege a policy, that's different from just saying they're being mean to me. If you're saying they're taking – my application is taking too long because it's taking too long. They don't like me. They're not paying attention. That's not a policy that is legally vulnerable. We have alleged – And you agree that under those circumstances, the words of the Declaratory Judgment Act, which do suggest certain kinds of delay are not relevant, would come into play, right? The 270-day rule, et cetera. If that was – In the absence of an allegation policy. Yes. Yes, sir. Well, what if they announced a policy? We – gee, we're the IRS. They haven't given us enough money. We have too many applications. And we're just never going to be – just like, say, most federal agencies answer with respect to the Freedom of Information Act. Right. That statute requires a decision within, I don't know, some amount of days that virtually no agency actually answers, and often for good reason. They have a billion requests, and they have, you know, a billion minus a billion employees to handle that number. Yes, sir. So how would you distinguish it from that? Well, I think that, unfortunately, we have to allow reality to intrude here to a certain extent. And if you're dealing with a situation in which an agency is just overwhelmed, is it conceivable that a clever law student could draft a complaint that says that this is a violation of due process? Yes. I think probably that could happen. See, I read your complaint. I thought your answer – and this was to bring it back to the first set of questions Chief Judge Garland asked you, which is – I thought your answer was going to be, yes, it's a policy, but it's a policy that's based on our viewpoint. And that's why it's not just a normal delay. Oh. In fact, you say in your complaint that this delay is preventing Z Street from exercising its First Amendment rights. Yes, sir. On the subjects it cares about. Yes, sir. That's exactly what you – That's the difference, is it? That's the distinction I was about to draw. Okay. But then don't we – then doesn't the district court – if you're right, if this goes back to the district court, doesn't the district court have to address the constitutionality of that policy? Of course. Otherwise, this is no different from any other case. Absolutely. And that's exactly the place I was going in response to Chief Judge Garland's questions, precisely that. Right. If a policy of the government sits down in the middle of the road and says, you know, we're just not going to do this, does that violate the due process rights of everybody? Yes, it probably does. But there's no discrimination against any individual group of people. Based on viewpoint. And it's not viewpoint. It's not race. It's not gender. It's not any suspect classification. And I think that – and this court knows better than any other court that – and FOIA is the perfect example. Yes. Is the statutory mandate being breached? Yes. It's breached every day. Is this court going to issue an injunction to every federal agency that doesn't respond to FOIA requests within the deadline that says, you know, drop everything else you're doing and rule on these FOIA requests? No. But if – where there is a classification that's constitutionally suspect, and viewpoint discrimination obviously is such a classification, then yes. Then in that, I hope, limited category of cases, yes, it's appropriate. Okay. So then given your answer to that question, go back and tell me again – let's then go back to the question of exactly what you're seeking. We are seeking an order that says that the government must process our application for without applying the policy, which we allege, calls for extra delay for organizations with – And to do that, we – the court has to make a judgment about the constitutionality of that policy. Yes, sir. Okay. And I think that Cohen specifically says that that's perfectly appropriate. By the way, the government is fond of quoting the language on page 733 of the court's opinion in Cohen that says it's sui generis. But I think Your Honor's questions were approaching the following issue. What's the genus? The government wants the court to believe that the genus that was at issue in Cohen is things that happen after assessment and collection is over. And that is emphatically not what the court said. But this case is different from Cohen. I'm sorry? This case is different from Cohen. Not in any respect. Well, because if you're right and you win, you increase the chances. Cohen says – Cohen says the three standards – hold on just a second. Well, I can't find my notes. Cohen said there's three things you look at. The third one is implications for – here, here it is. The third one is and any implications that remedy may have on the assessment. This could have implications because if the court strikes down the policy, it increases the likelihood that you get a tax exemption. That was going to lead me to my question. So is your theory that this case is controlled by Cohen or that what's really going on here is South Carolina v. Reagan, that is that Congress never intended – whatever the implications are for potential assessment and collection of taxes, Congress did not intend in the Anti-Injunction Act to have it apply to someone who had no remedy for the claim they're bringing. So I guess my answer to that question is yes. Yes. And let me explain. Go ahead. First of all, with respect to Cohen, I do very firmly believe that the case is controlled by Cohen for the following reason. In the part of the opinion where the court says this is sui generis, the genus is those cases in which the plaintiff is suing to attack a procedure of the agency and not the result. If you're attacking the procedure, this court says at 733 and it relies extensively on the Supreme Court's case in McCarthy v. Madigan and a whole bunch of other cases. Then why would it – why would – when we stated our standard, would one of them have been the implications the remedy might have for the assessment or collection of taxes? Well, I think that's another way of asking whether you're really attacking the procedure or something else. I think that to the extent that one encroaches upon the result, maybe what's really going on is not the procedure. But Your Honor's question is to counsel. Government counsel, I think, made the following point, which I think is an effective answer to this problem, and that is since the only thing we're suing about is delay, we really are completely agnostic on what the ultimate impact of this is going to be on the result. I don't know whether the government is actually going to deny us an exemption because of the substance of our opinions or not, and that's not what this case is about. All we have said is you're taking longer because of that. So if we win, we get a process that doesn't take longer. And that's the beginning and the end of this case. So once you brought a lawsuit, then it not only took longer, but they quit working on it altogether at that point. Correct. And which I think, I mean, you know, one of the ironies of this is that the argument that the government has made is, oh, you don't have a real problem because after 270 days, you can start a lawsuit, and that will solve the problem. So we started a lawsuit in 2010. Here it is 2015, and here we all are. Of course, you have some other questions. Thank you. Thank you. We'll hear from the government. How much time does she have? No time. I'll give you two minutes. One statutory basis for denying the relief slot in this case is that the implication of Congress's allowing a suit for a declaratory judgment regarding qualification for exemption, but only after 270 days have elapsed without any action being taken. So that implies that there's a protected period where the IRS, you know, is free to look at. Well, you don't really mean that, right? Because the next couple words would be the IRS is free to discriminate on the basis of viewpoint, religion, race. You don't actually think that, do you? For 270 days. That's what you want, right? Well, you don't want that to be our takeaway here, that the government's position is. I mean, I think if I were you, I would go back and ask your superiors whether they want us to represent that the government's position in this case is that the government is free to unconstitutionally discriminate against its citizens for 270 days. I would be stunned if the current Attorney General would agree with that position. Stunned. And the last Attorney General. And the one before that. Or the one before that. Or anyone. That can't be the position. Now, do you want to think about again whether that's really your position? Well, I will take that back. And some of the people are actually in this room, Your Honor. So I would also point out that it's really hard to distinguish between complaints, that other person is going through less red tape than I am. That's to get the core. But if the argument is that other person is going through more red tape than I am because of his or her viewpoint, that's a totally different case. It's very easy to distinguish. I don't see why you have so much trouble making that distinction. Of course you're right that if someone says, you know, everybody else is going faster than me and that's all you say, that's an easy case. But that's not this case. And if it turns out that there's no evidence of this policy, if it turns out it's misconstruction of what the agent said, turns out that this letter maybe was never even sent, then all that's left is normal red tape and you win. Right. You know, a constitutional allegation of discrimination was also an issue in Bob Jones. And the Supreme Court said discrimination can be addressed later. But that was because what they were doing was they were moving to challenge a withdrawal and an exemption, right? Isn't that what happened in Bob Jones? Yes, that's exactly what happened. And there was no delay. The delay here is an unconstitutional delay. That was not an issue in Bob Jones. They were arguing that, well, withdrawing our tax exemption is unconstitutional, and the court said, well, you know, you can raise that when you seek a refund. I'm just going to read you. This is the first paragraph of Bob Jones. The question presented is whether a court may enjoin the service from revoking a ruling letter declaring the petitioner qualifies for taxes and status. In other words, it had already been done. It had already been revoked, and they were challenging that. Now, at that time they didn't have an opportunity to challenge, and that was fixed. Well, then, Your Honor, the commissioner could grant all exemptions and then decide to revoke them later, and it would fall within Bob Jones. I think then there would be no reason to go under complaint directly. You would sue immediately, and I don't think they would have any problem with that. They would sue immediately to challenge the revocation of the exemption under the statute. And that would be consistent with Section 7428. But that's not available right now. That's not this case. Well, they were 31 days away from the 7428. They're years past it now due to the IRS's discretionary choice to not process it while they're in litigation. All right, we'll take the matter under advisement. Thank you very much to both sides.
judges: Garland, Tatel, Sentelle